UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNIPRO GRAPHICS, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 21-cv-1700 |
| VIBRANT IMPRESSIONS, INC., | ) Judge Marvin E. Aspen |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Defendant Vibrant Impressions, Inc. ("Vibrant") has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that a judgment rendered by a Wisconsin state court against Plaintiff Unipro Graphics, Inc. ("Unipro") in a prior lawsuit precludes Unipro from pursuing its claims in this case. (Dkt. No. 15, Vibrant's Mot. for J. on the Pleadings ("Mot.").)[1] Unipro opposes the motion. (Dkt. No. 20, Unipro's Resp. in Opp'n to Vibrant's Mot. ("Opp'n").) For the following reasons, we deny Vibrant's motion.

**BACKGROUND**

The following background is based on the pleadings, "documents incorporated by reference to the pleadings," and matters that are the subject of judicial notice. *See Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017) (citation omitted). We have accepted all well-pleaded allegations from Unipro's complaint as true and have drawn all reasonable inferences in Unipro's favor. *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016).

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Unipro is an Illinois corporation that uses intellectual property, artwork, and designs from its clients to print and produce product labels. (Dkt. No. 1-1 at 4–14 ("Compl."), ¶ 1.) Vibrant is a Wisconsin printing company. (*Id.* ¶ 2.) Unipro and Vibrant did business together for more than thirty years. (*Id.*) Unipro provided Vibrant with intellectual property, design files, and artwork from its clients, as well as printing equipment, such as printing plates and dies; Vibrant, in turn, carried out print jobs for Unipro and, by extension, Unipro's clients. (*Id.* ¶¶ 4–6.) Unipro provided its clients' intellectual property, design files, and artwork to Vibrant in confidence, and Vibrant knew that these materials were sensitive and private. (*Id.* ¶ 6.) Vibrant also knew it was supposed to only use the design materials and printing equipment to complete Unipro's print jobs. (*Id.* ¶¶ 7, 9.)

The relationship between Unipro and Vibrant began to sour in mid-2018. At this time, the parties had agreements where Vibrant would perform print jobs for two Unipro clients, Kraft-Heinz and Smithfield. (*Id.* ¶ 10.) Unipro had paid for these jobs and provided the necessary materials for them. (*Id.* ¶ 11.) On July 4, 2018, however, Vibrant's owner demanded an immediate payment of $50,000 from Unipro's owners; otherwise, Vibrant would not complete the pending print jobs. (*Id.* ¶¶ 12, 13.) Despite being current on all payments due to Vibrant, Unipro's owners paid Vibrant the demanded amount so that Vibrant would finish the pending print jobs. (*Id.* ¶¶ 14, 15.) But even after the payment, Vibrant failed to complete the Smithfield print job as promised. (*Id.* ¶ 16.) Then, on August 29, Vibrant again advised Unipro that it needed an additional immediate payment before it would perform any more work on pending print jobs, even though Unipro had performed everything required by the parties' contracts and had made all payments due. (*Id.* ¶¶ 18, 19.) Although not pleaded, we presume Unipro did not

2

make the payment requested by Vibrant on August 29 because Vibrant did not complete the pending print jobs or otherwise perform any more work for Unipro. (*Id.* ¶ 20.)

Unipro thereafter demanded that Vibrant return the designs, artwork, and printing equipment it had provided to Vibrant in connection with the print jobs, which are collectively worth more than $80,000. (*Id.* ¶¶ 22, 24, 26, 28, 29.) Vibrant refused. (*Id.* ¶¶ 23, 25, 27.) Not only that, Vibrant has used these materials to try to poach Unipro's clients. (*Id.* ¶¶ 30–32.) Because of Vibrant's actions, Unipro suffered more than $500,000 in lost profits and business losses. (*Id.* ¶¶ 33, 34.)

However, it was Vibrant, not Unipro, that first sought relief from the courts. On February 18, 2019, Vibrant sued Unipro in the Circuit Court of Brown County, Wisconsin, alleging that Unipro owed $19,115.66 for goods and services provided by Vibrant on an open account (the "Wisconsin Action"). (Dkt. No. 15-1, Mot. Ex. A, at 4.) Vibrant requested judgment against Unipro in that amount, plus interest, and for an award of costs, expenses, and reasonable attorneys' fees. (*Id.* at 5.) Unipro was served with the complaint on February 20, but it did not respond to the complaint within twenty days, as required by Wisconsin law. (*Id.* at 7, 9, 16); *see* Wis. Stat. § 802.06(1)(a). On March 14 (twenty-two days after service), Vibrant moved for default judgment. (Mot. Ex. A at 7–8.) The following day, the circuit court granted Vibrant's motion and entered default judgment against Unipro for $19,176.86, plus interest, costs, disbursements, and fees (the "Wisconsin Judgment").[2] (*Id.* at 14–15.)

---

[2] The difference between the principal amount sought by Vibrant in its complaint, $19,115.66, and the principal amount awarded by the circuit court, $19,176.86, appears to be due to the passage of time. Vibrant's complaint alleged a debt of $19,115.66 as of February 18, 2019. (Mot. Ex. A at 4.) By the time Vibrant moved for default judgment on March 14, the amount Unipro allegedly owed had increased to $19,176.86. (*Id.* at 7–11.)

3

Unipro immediately moved to vacate the Wisconsin Judgment. (*Id.* at 16–18.) After the circuit court denied the motion, Unipro moved for reconsideration. (*Id.* at 23, 25–29.) In seeking reconsideration, Unipro made several representations and arguments that sought to convince the circuit court that its Affirmative Defenses and Counterclaim[3] were "inseparable" from Vibrant's claim against Unipro and should be addressed in the same case. (*Id.* at 27.) For instance, Unipro argued that if the circuit court did not vacate the Wisconsin Judgment, Unipro would be forced to immediately file "a separate lawsuit [that] will involve the *same* breach of contract issues alleged by [Unipro] in its Affirmative Defenses and Counterclaim; and those breach of contract issues pertain to the *same* services to which [Vibrant] makes a claim for payment here." (*Id.* (emphases added).) Moreover, according to Unipro, its Affirmative Defenses and Counterclaim involved Vibrant's "failure to properly perform all of its services," which was an issue that "*must* be adjudicated before" the court could determine that Unipro owed any money to Vibrant. (*Id.* at 28 (emphasis added).) Unipro also contended that Vibrant had taken control of Unipro's property "in conjunction with its failure to fulfill its obligations and the agreement for its services" and that Vibrant's improper retention and use of Unipro's property was "*inseparable* to the issues of the parties and their duties and obligations to each other, and the services and contract that was to be performed, and any monies that may be owed in relation thereto." (*Id.* (emphasis added).) In sum, Unipro's counterclaim and Vibrant's complaint "arise from the *same facts* and should be resolved simultaneously." (*Id.* at 50 (emphasis added).) But the circuit court was not persuaded—it denied Unipro's motion for reconsideration. (*Id.* at 53–54.)

---

[3] Unipro's briefing in the Wisconsin Action repeatedly refers to its Affirmative Defenses and Counterclaim, but we have not seen any such pleadings in the record.

4

Unipro appealed. (*Id.* at 55.) On appeal, Unipro again represented that its counterclaim and Vibrant's complaint "arise from the same facts." (*Id.* at 85.) Unipro further insisted that if it succeeded on its counterclaim, it likely would not owe any money to Vibrant; instead, Vibrant possibly would need to pay Unipro. (*Id.* at 87.) Unipro fared no better on appeal, as the Wisconsin Court of Appeals summarily dismissed Unipro's appeal for lack of jurisdiction on February 2, 2021. (*Id.* at 98–103.)

Three weeks later, Unipro sued Vibrant in the Circuit Court of Cook County, Illinois, alleging claims for breach of contract (Count I), conversion (Count II), tortious interference with business relations (Count III), and unjust enrichment (Count IV). (Compl. ¶¶ 35–74.) After removing Unipro's lawsuit to this Court based on diversity jurisdiction (Dkt. No. 1), Vibrant answered Unipro's Complaint (Dkt. No. 12). In its Answer, Vibrant asserts claim preclusion based on the Wisconsin Judgment as an affirmative defense. (*Id.* at 13–14.)

## LEGAL STANDARD

In most circumstances, the proper way for a defendant to seek dismissal at the outset of a case based on claim preclusion[4] is to answer the complaint "and then move under Rule 12(c) for judgment on the pleadings." *See Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020); *Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1016 n.2 (7th Cir. 2014). Rule 12(c) provides a way to resolve "cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." *Bank of N.Y. Mellon v. Estrada*, No. 12 C 5952, 2013 WL 3811999, at *1 (N.D. Ill. July 22, 2013) (citation omitted). For purposes of a Rule 12(c) motion, the

---

[4] Claim preclusion is sometimes referred to as res judicata. *Gann v. William Timblin Transit, Inc.*, 522 F. Supp. 2d 1021, 1026 (N.D. Ill. 2007). Unless discussing a case that uses the term res judicata, we use the term claim preclusion. *See id.* at 1026 n.3 (using "claim preclusion" instead of "res judicata"); *N. States Power Co. v. Bugher*, 525 N.W.2d 723, 727 (Wis. 1995) (same).

"[p]leadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.*; *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312 (7th Cir. 2020) (internal quotation marks omitted).

We review Rule 12(c) motions using the same standards applicable to Rule 12(b)(6) motions. *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). The complaint must state a claim that is plausible on its face, *St. John*, 822 F.3d at 389, which means that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). We accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *St. John*, 822 F.3d at 389. To succeed on a Rule 12(c) motion, "the moving party must demonstrate that there are no material issues of fact to be resolved." *Federated Mut.*, 983 F.3d at 313 (citation omitted); *see also Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017) ("Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law.").

## ANALYSIS

Vibrant argues that judgment on the pleadings is appropriate because the Wisconsin Judgment precludes Unipro from proceeding with this lawsuit. Unipro disagrees, and it further contends that we must convert Vibrant's Rule 12(c) motion into a summary judgment motion.

### I. Conversion to a Summary Judgment Motion

Initially, we consider whether we must convert Vibrant's Rule 12(c) motion to a motion for summary judgment. Unipro's argument on this point proceeds as follows: Vibrant's motion "presents and relies upon matters outside of the pleadings," so we must treat it as a summary judgment motion. (Opp'n at 1.) Then, once we do this, we must deny the motion because

Vibrant's Answer and an affidavit Unipro submitted from Carole Lyke, Unipro's sole shareholder and owner, demonstrate that there are genuine issues of material fact that can only be resolved by conducting discovery. (*Id.* at 1–2, 6–7.) In response, Vibrant contends that we may take judicial notice of the matters outside of the pleadings that it relied upon without converting its Rule 12(c) motion to a summary judgment motion. (Dkt. No. 21, Vibrant's Reply in Supp. of its Mot. ("Reply"), at 3–5.) Vibrant also argues that Ms. Lyke's affidavit is improper and that we should disregard it. (*Id.* at 5.)

Generally, Rule 12(d) requires a court to treat a Rule 12(b)(6) or 12(c) motion as one for summary judgment if the court considers "materials outside the pleadings." Fed. R. Civ. P. 12(d); *Federated Mut.*, 983 F.3d at 313. But a court does not need to convert a Rule 12(b)(6) or 12(c) motion into a summary judgment motion when it properly takes judicial notice of matters outside the pleadings. *See Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012); *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137 n.14 (7th Cir. 2008); *In re Montemurro*, 580 B.R. 490, 495 (Bankr. N.D. Ill. 2017) ("Taking judicial notice does not trigger Civil Rule 12(d)."); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1371 (3d. ed. June 2021 update) ("Conversion [of a Rule 12(c) motion to a summary judgment motion] will not occur with regard to all matters subject to judicial notice[.]"). State court actions, decisions, and filings are proper subjects of judicial notice. *Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016); *Shannon*, 549 F.3d at 1137 n.14; *Kane v. Bank of Am., N.A.*, 338 F. Supp. 3d 866, 869 (N.D. Ill. 2018); *see also Chi. Reg'l Council of Carpenters v. Prate Installations, Inc.*, No. 10 C 5431, 2011 WL 336248, at *1 (N.D. Ill. Jan. 31, 2011) (explaining that "courts must necessarily look to the details of the earlier lawsuit" to determine whether claim preclusion applies at the Rule 12(c) stage).

The "matters outside the pleadings" upon which Vibrant relies are the records of the proceedings in the Wisconsin Action. (*See generally* Mot. Ex. A.) We can take judicial notice of these records to resolve Vibrant's Rule 12(c) motion. *See, e.g.*, *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 631–32 (7th Cir. 2020) (facts "alleged in the complaint and as revealed by the docket in the prior case" were "proper subjects of judicial notice" in reviewing the defendant's Rule 12(b)(6) motion based on res judicata); *Kane*, 338 F. Supp. 3d at 869–70 (taking judicial notice of state court filings in resolving the defendants' Rule 12(c) motion based on claim preclusion); *see also Burton*, 961 F.3d at 962 (taking "judicial notice of the contents of filings" in the plaintiff's first case when considering whether the defendants forfeited their res judicata defense). And doing so does not require us to convert Vibrant's motion into one for summary judgment. *See, e.g.*, *Ennenga*, 677 F.3d at 773–74; *Shannon*, 549 F.3d at 1137 n.14; *U.S. Bank, Nat'l Ass'n v. JKM Mundelein LLC*, No. 14 C 10048, 2015 WL 2259474, at *2–6 (N.D. Ill. May 12, 2015) (granting Rule 12(b)(6) and Rule 12(c) motions based on res judicata by taking judicial notice of pleadings and orders from a previous state court action without converting the motions to summary judgment motions). Therefore, Vibrant's reliance upon the record from the Wisconsin Action does not require us to treat its Rule 12(c) motion as a summary judgment motion.

That said, we must still determine what to do about Ms. Lyke's affidavit. (*See* Dkt. No. 20-1, July 27, 2021 Aff. of Carole Lyke ("Lyke Aff.").) Vibrant asserts that we should disregard the affidavit because it is improper for Unipro to submit it at the Rule 12(c) stage in the first place. (Reply at 5.) But Vibrant does not cite any authority that precludes a party from submitting evidence to try to avoid judgment on the pleadings. In fact, Rule 12(d) implicitly recognizes that such submissions are permitted by explaining what a court must do if this

happens. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Moreover, in *Federated Mutual*, the defendant attempted to submit "new facts" outside the pleadings to oppose the plaintiff's Rule 12(c) motion, yet the Seventh Circuit did not once suggest that the defendants' attempts violated Rule 12(c). 983 F.3d at 311–12, 315–18. Instead, the *Federated Mutual* court cautioned district courts to "not allow motions for judgment on the pleadings to deprive the non-moving party of the opportunity to make its case." *Id.* at 313. Automatically disregarding evidence submitted by a party in response to a Rule 12(c) motion runs the risk of depriving that party of a chance to make its case.

   The ultimate question in resolving Vibrant's Rule 12(c) motion is whether disputed issues of material fact exist that preclude judgment as a matter of law in Vibrant's favor. *See Unite Here*, 862 F.3d at 595. To that end, we will consider Ms. Lyke's affidavit "for the limited purpose of assessing whether [Unipro] seeks to present specific controverted material factual issues." *Federated Mut.*, 983 F.3d at 314–15 (internal quotation marks omitted). Like our ability to take judicial notice of certain matters outside the pleadings, considering Ms. Lyke's affidavit for this limited purpose does not require us to convert Vibrant's Rule 12(c) motion into one for summary judgment. *See id.* (considering deposition testimony presented by the non-movant on appeal for this limited purpose when considering a Rule 12(c) motion); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 578, 582–83 (7th Cir. 2009) (finding that a district court that considered publicly available prospectuses for the limited purpose of showing what the documents disclosed "acted within its discretion when it chose not to convert the defendants' motion under Rule 12(b)(6) to a motion for summary judgment").

## II. Preclusive Effect of the Wisconsin Judgment

We next examine whether the Wisconsin Judgment precludes Unipro's claims in this lawsuit. Wisconsin law determines the preclusive effect of the Wisconsin Judgment. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 1331–32 (1985); *Threshermen's Mut. Ins. Co. v. Wallingford Mut. Ins. Co.*, 26 F.3d 776, 781–82 (7th Cir. 1994). For evidentiary or procedural matters, however, we look to federal law. *Milwaukee Metro. Sewerage Dist. v. Am. Int'l Specialty Lines Ins. Co.*, 598 F.3d 311, 316 (7th Cir. 2010).

Under the doctrine of claim preclusion, a final judgment on the merits in one action forecloses subsequent actions between the same parties in certain circumstances. *Teske v. Wilson Mut. Ins. Co.*, 2019 WI 62, ¶ 23, 928 N.W.2d 555, 561. Claim preclusion in Wisconsin "has three elements: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and[] (3) a final judgment on the merits in a court of competent jurisdiction." *Menard, Inc. v. Liteway Lighting Prods.*, 2005 WI 98, ¶ 26, 698 N.W.2d 738, 745 (internal quotation marks omitted). In general, claim preclusion applies "to a plaintiff in a second action who was also a plaintiff in the first action, to a plaintiff in privity with the plaintiff in the first action, or to a counterclaiming defendant who did not prevail in the first action." *Wickenhauser v. Lehtinen*, 2007 WI 82, ¶ 23, 734 N.W.2d 855, 864 (internal footnotes omitted). None of these situations is present here; Unipro, the plaintiff in this litigation, was a defendant in the prior Wisconsin Action and did not file a counterclaim.

In our situation, "[c]laim preclusion, *standing alone*, is not a bar to" Unipro's present suit because counterclaims in Wisconsin generally are permissive. *Id.* ¶¶ 23–24 (emphasis in original). Nonetheless, Wisconsin courts have "adopted the common-law compulsory counterclaim rule" set forth in the Restatement (Second) of Judgments, *id.* ¶ 25, which "creates

an exception to the permissive counterclaim statute," *Menard*, 2005 WI 98, ¶ 28. For the common-law compulsory counterclaim rule to apply and bar a subsequent action by a party who was a defendant in a previous suit, all the claim preclusion elements must be present, and a verdict for the plaintiff in the second suit must undermine the prior judgment or "impair the established legal rights of the plaintiff in the initial action." *Id.*

We begin our analysis by asking whether all the elements of claim preclusion have been met. *See Wickenhauser*, 2007 WI 82, ¶ 27. The parties in this litigation and the Wisconsin Action are identical, so the first claim preclusion element is satisfied. There also is no dispute that the Brown County Circuit Court is a court of competent jurisdiction, as required by the third claim preclusion element. *See* Wis. Const. art. VII, § 8 (stating, in relevant part, that "the circuit court shall have original jurisdiction in all matters civil and criminal within this state"). But Unipro does dispute that the circuit court's default judgment is a final judgment. According to Unipro, the Wisconsin Judgment is not a final judgment on the merits because "it was obtained without Unipro having an opportunity to file its claims." (Opp'n at 9.)

This argument is without basis in fact or law. Unipro did have an opportunity to file counterclaims in the Wisconsin Action; it just did not do so in the time allowed by Wisconsin law. Unipro also does not direct us to any legal authority suggesting that a prior judgment must resolve the claims brought in a second action to be a final judgment on the merits. Indeed, such a rule would nullify one of claim preclusion's primary features: the ability to preclude claims that were not raised in the prior litigation if they *could have been* raised. *See Threshermen's*, 26 F.3d at 782–83 (applying Wisconsin law); *Lindas v. Cady*, 515 N.W.2d 458, 463 (Wis. 1994).

The Wisconsin Supreme Court's *Menard* decision squarely forecloses Unipro's "final judgment" argument. In *Menard*, the court held that a lawsuit brought by Liteway against

11

Menard for nonpayment of invoices barred Menard's later lawsuit against Liteway seeking credit for allegedly defective products "under the doctrine of claim preclusion and the common-law compulsory counterclaim rule." 2005 WI 98, ¶ 2. Like Unipro, Menard asserted claims in the second suit that it did not assert in the first suit. *See id.* ¶¶ 21, 42. And like Unipro, Menard did not assert these claims in the first suit because it had a default judgment entered against it after failing to timely respond to the complaint. *Id.* ¶¶ 6–8, 10, 12. Yet the *Menard* court had no trouble concluding that the default judgment in the first suit was a final judgment on the merits for purposes of claim preclusion. *Id.* ¶ 29. Neither do we. The Wisconsin Judgment satisfies the third claim preclusion element.

That leaves the second claim preclusion element—identity of claims. Determining whether there is an identity of claims "requires us to examine both lawsuits within the framework of the transactional analysis adopted from the Restatement (Second) of Judgments § 24 (1982)." *Wickenhauser*, 2007 WI 82, ¶ 30. "Under this analysis, all claims arising out of one transaction or factual situation are treated as being part of a single cause of action." *Id.* (internal quotation marks omitted). "A transaction connotes a natural grouping or common nucleus of operative facts." *Id.* (internal quotation marks omitted). "To determine whether claims arise from one transaction, we may consider whether the facts are related in time, space, origin, or motivation." *Id.* (internal quotation marks omitted). Any differences between "the legal theories, remedies sought, and evidence used" in the two actions, however, are irrelevant to our analysis. *Id.* (internal quotation marks omitted).

Because the Wisconsin Judgment is a default judgment, we must also restrict our analysis "to the pleadings in the prior default." *A.B.C.G. Enters., Inc. v. First Bank Se., N.A.*, 515 N.W.2d 904, 910 (Wis. 1994). The conclusiveness of the Wisconsin Judgment for claim

12

preclusion purposes "is limited to the material issuable facts [that] are well pleaded in the declaration or complaint." *Id.* (internal quotation marks omitted). The Wisconsin Judgment "does not extend to issues [that] were not raised in the pleadings" of the Wisconsin Action. *Id.* (internal quotation marks omitted); *see also Bray v. Gateway Ins. Co.*, 2010 WI App 22, ¶¶ 18–21, 779 N.W.2d 695, 702–03 (default judgment against the defendant was not conclusive as to the scope of the plaintiff's injuries and resulting damages because the complaint alleged only that the plaintiff injured his lower back without "specify[ing] the extent of those injuries").

Vibrant's complaint in the Wisconsin Action alleged, in relevant part, as follows:

> 3. Defendant is indebted to Plaintiff for goods and services provided on open account on Defendant's behalf, or at Defendant's request, in the amount of $19,115.66 as of February 18, 2019.
>
> 4. Plaintiff has made repeated demands on Defendant for the indebtedness described above, but Defendant has refused to pay and continues to refuse to pay the same.

(Mot. Ex. A at 4–5.) Vibrant demanded a judgment against Unipro for $19,115.66, plus interest, costs, and expenses, and the circuit court awarded $19,176.86, plus interest, costs, and expenses.[5]

(*Id.* at 5, 14–15.) In this litigation, Unipro alleges that Vibrant refused to complete printing jobs it was contractually obligated to perform. (*E.g.*, Compl. ¶¶ 4, 8, 10, 16–21.) Unipro also alleges that Vibrant has wrongfully kept and used artwork, design files, printing plates, dies, and other property provided by Unipro. (*E.g., id.* ¶¶ 4–7, 22–27, 30–32.) For these alleged misdeeds, Unipro seeks a judgment for more than $500,000, plus costs. (*See id.* Counts I–IV.)

---

[5] The $61.20 difference between the principal sought in Vibrant's complaint and the principal awarded by the circuit court does not affect our claim preclusion analysis.

13

Based on the facts pleaded in Vibrant's complaint, we know that the Wisconsin Judgment required Unipro to pay more than $19,000 to satisfy a debt it incurred for goods and services provided by Vibrant. But that is all we know. The complaint does not disclose anything about the nature of the goods and services Vibrant provided or for which Unipro clients (if any) they were provided. (*See* Mot. Ex. A at 4–5.) Even if we assume that the goods and services at issue were "print jobs," we do not know if or how these print jobs relate to the print jobs for which Unipro seeks to recover in this lawsuit. Nor does Vibrant's complaint plead any facts indicating that it kept artwork, printing plates, design files, dies, or other property provided by Unipro, as Unipro alleges in this lawsuit. (*See id.*) Vibrant's complaint simply does not allege enough facts from which we can conclude at this stage of the litigation that Unipro's claims in this lawsuit arise out of "a natural grouping or common nucleus of operative facts" as Vibrant's claim in the Wisconsin Action. *See Wickenhauser*, 2007 WI 82, ¶ 30 (internal quotation marks omitted).

Arguing otherwise, Vibrant primarily relies upon representations and arguments made by Unipro in the Wisconsin Action, which purportedly demonstrate that both actions share a common nucleus of operative facts. (Mot. at 14–17; Reply at 2, 7–11.) We agree that Unipro made several representations and arguments in the Wisconsin Action that suggest its claims in this lawsuit arise out of the same facts as Vibrant's claim in the Wisconsin Action. By way of example, Unipro asserted in the Wisconsin Action that:

- Its counterclaim and Vibrant's complaint "arise from the *same facts*" and should be resolved simultaneously. (Mot. Ex. A at 50, 85 (emphasis added).)
- If the circuit court did not vacate the Wisconsin Judgment, Unipro would be forced to immediately file "a separate lawsuit [that] will involve the *same* breach of contract issues alleged by [Unipro] in its Affirmative Defenses and Counterclaim; and those breach of

14

contract issues pertain to the *same* services to which [Vibrant] makes a claim for payment here." (*Id.* at 27 (emphases added).)

- Its Affirmative Defenses and Counterclaim involved Vibrant's "failure to properly perform all of its services," which was an issue that "*must* be adjudicated before" the court determined that Unipro owed any money to Vibrant. (*Id.* at 28 (emphasis added).)

- Vibrant had taken control of Unipro's property "in conjunction with its failure to fulfill its obligations and the agreement for its services" and that this improper retention and use of Unipro's property was "*inseparable* to the issues of the parties and their duties and obligations to each other, and the services and contract that was to be performed, and any monies that may be owed in relation thereto." (*Id.* (emphasis added).)

We also observe that Unipro's attorneys failed to even address the apparent inconsistencies between these prior assertions and their current assertion that "Unipro's claims are *factually distinct* from the claims in the Wisconsin Action." (Opp'n at 9 (emphasis added)); *see Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991) ("The ostrich's posture is not a seemly one for a lawyer.").

Even so, Unipro's assertions in the Wisconsin Action do not conclusively bind Unipro in *this* litigation because "a statement made in one lawsuit cannot be a judicial admission in another." *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996); *Griffin v. City of Chicago*, 497 F. Supp. 3d 307, 315 (N.D. Ill. 2020). And although we can judicially notice the fact that Unipro made certain assertions in the Wisconsin Action, we cannot use this notice to conclude that these assertions undisputedly describe Unipro's claims in this litigation. *See Griffin*, 497 F. Supp. 3d at 316; *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, No. 04 C 3123, 2007 WL 845046, at *9 (N.D. Ill. Mar. 16, 2007) ("Typically, . . . [judicial] notice of a court order is

limited to the purpose of recognizing the judicial act or litigation filing; judicial notice is generally not for the truth of the matters asserted in a court document.").

At best, Unipro's prior assertions are evidentiary admissions that Unipro may explain or controvert in this litigation. *See Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 753 n.2 (7th Cir. 2001); *Kohler*, 80 F.3d at 1185; *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). Unipro has not explained its assertions in the Wisconsin Action, but it has submitted evidence—Ms. Lyke's affidavit—that appears to controvert these prior assertions. (Lyke Aff. ¶ 31 ("The Illinois Action is based upon the oral contracts and Purchase Orders/Invoices for completely different jobs and which are wholly separate from those in the Wisconsin Action.").) Ultimately, Ms. Lyke's affidavit indicates that Unipro intends to submit evidence to dispute Vibrant's evidence regarding the factual bases underlying Unipro's claims in this litigation. We cannot resolve this competing evidence at the Rule 12(c) stage. *See Bank of N.Y. Mellon*, 2013 WL 3811999, at *1 ("[I]t appears that material facts are in dispute and, therefore, that judgment on the pleadings pursuant to Rule 12(c) is not appropriate."); *Henderson v. U.S. Bank, N.A.*, 615 F. Supp. 2d 804, 808 (E.D. Wis. 2009) ("The court must accept as true the nonmovant's version of the facts and may not resolve factual disputes [in resolving a Rule 12(c) motion].").

Notably, Vibrant does not direct us to any legal precedent or doctrine that permits us to define Unipro's claims in this litigation based on its statements in the prior Wisconsin Action. The closest Vibrant gets is citing the United States Supreme Court's decision in *New Hampshire v. Maine* for the proposition that "'deliberately changing positions according to the exigencies of the moment' suggests that a party is 'playing fast and loose with the courts.'" (Reply at 10 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1814–15 (2001)).) This proposition may be true enough, but courts can address it by invoking the equitable doctrine of

16

judicial estoppel. *New Hampshire*, 532 U.S. at 749–50, 121 S. Ct. at 1814–15. Vibrant does not argue that we should invoke this doctrine. Nor could it. For judicial estoppel to apply, "the party must have prevailed on the basis of its earlier position." *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 914 (7th Cir. 2005);[6] *see New Hampshire*, 532 U.S. at 750–51, 121 S. Ct. at 1815 ("*Absent success in a prior proceeding,* a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity." (emphasis added) (internal citations omitted)). Unipro did not prevail in the Wisconsin Action in any sense.

Vibrant puts forth other arguments as well, but these secondary arguments are not convincing either. First, Vibrant contends that the identity-of-claims element is satisfied because "both lawsuits arise out of the parties' dealings in their print business relationship." (Reply at 2; *see also id.* at 10 ("Unipro's theories of why Vibrant is liable to it . . . indisputably arise out of *the very same print business relationship* that formed the basis of Vibrant's claim." (emphasis in original)).) To the extent Vibrant maintains that every dispute arising out of the parties' business relationship is part of the same "transaction," we disagree. Unipro's relationship with Vibrant spanned more than three decades. (Compl. ¶ 2.) If we accepted Vibrant's argument, a dispute that arose in the 1990s necessarily would be part of the same transaction as a dispute that arose in the 2010s. And every dispute that arose out of the parties' business relationship would be part of the same transaction regardless of whether the disputes had any relation to each other. The transactional approach requires us to analyze "claims under a pragmatic standard," taking into account whether the operative facts are separated by "time, space, origin, or motivation." *Menard*, 2005 WI 98, ¶¶ 30, 33, 41 (internal quotation marks omitted). This standard does not

---

[6] We apply federal law with respect to judicial estoppel. *Jarrard*, 405 F.3d at 914.

support treating every dispute that may have arisen during the parties' decades-long business relationship as part of the same "transaction."

Vibrant's intent in making this argument may have been to show that the identity-of-claims element is satisfied even if we accept Unipro's contention that the two lawsuits involve different print jobs and conduct. If so, Vibrant did not make this showing. Vibrant eschewed addressing Ms. Lyke's affidavit in any detail (*see* Reply at 9 n.5), and it did not explain how, assuming the factual differences asserted by Unipro and Ms. Lyke, Unipro's claims still arise out of the same set of operative facts as Vibrant's claim in the Wisconsin Action. Vibrant's argument on this point does not demonstrate that the identity-of-claims element is undisputedly met, as was Vibrant's burden. *See Federated Mut.*, 983 F.3d at 313 ("[T]he moving party must demonstrate that there are no material issues of fact to be resolved." (citation omitted)); *Hull v. Glewwe*, 2019 WI App 27, ¶ 18, 931 N.W.2d 266, 273 ("The burden of proving claim preclusion is upon the party asserting its applicability[.]").

Second, Vibrant relies upon *Menard* to argue that our focus should be "not on what was in Vibrant's complaint that resulted in the default judgment, but rather whether Unipro's current claims were available to it at the time as counterclaims." (Reply at 11 (emphasis omitted) (citing *Menard*, 2005 WI 98, ¶¶ 21, 36–38, 55).) But *Menard* in no way justifies ignoring what Vibrant did or did not plead in its complaint. To the contrary, immediately after recognizing that a prior default judgment's conclusiveness is limited to the complaint's well-pleaded facts, the *Menard* court compared the content of Liteway's complaint in the first suit to the claims brought by Menard in the second suit. 2005 WI 98, ¶¶ 34–36. If the proper focus was only on whether Menard could have brought its claims in the first suit, the *Menard* court would have no reason to make this comparison.

18

True, the *Menard* court also found it relevant "that all the facts giving rise to Menard's suit were in existence at the time Liteway filed its original action." *Id.* ¶ 38. But it was *more* important that these facts obviously "formed the foundation of both lawsuits." *Id.* Significantly, the parties in *Menard* did not dispute that the products for which Liteway's complaint in the first suit sought payment were the *same* products that Menard returned to Liteway and then sought credit for in the second action. *See, e.g.*, *id.* ¶ 21 ("It is uncontested that the dispute over the amount of money Menard owed Liteway on unpaid invoices was based on Menard's practice of taking a 'credit' for defective products."); ¶ 36 ("Liteway commenced its original action on October 19, 2000, for unpaid invoices as of September 1 of that year. It is also undisputed that Menard purchased these products from Liteway on credit."); ¶ 51 ("Liteway established the amount due and owing on its open invoices for the goods it sold to Menard in the first action. Now, Menard essentially challenges that amount by claiming that some of the goods for which it did not pay were defective and nonconforming."). In contrast, Unipro disputes that its claims in this litigation involve the same printing jobs and conduct that gave rise to the Wisconsin Action. (*See, e.g.*, Opp'n at 7–10; Lyke Aff. ¶¶ 25, 31.)

Third, Vibrant argues that the facts underlying Unipro's claims appear in the Wisconsin Action's record by way of motions, briefs, and declarations. (Reply at 11–12.) But, as already explained, statements made by Unipro in the Wisconsin Action are not conclusive in this litigation. Also, motions, briefs, and declarations are not pleadings. *See* Wis. Stat. § 802.01(1); *State v. Sutton*, 2012 WI 23, ¶ 20, 810 N.W.2d 210, 215; *Doe v. Archdiocese of Milwaukee*, 565 N.W.2d 94, 111 n.32 (Wis. 1997). Therefore, the Wisconsin Judgment does not extend to facts asserted in these filings. *See Menard*, 2005 WI 98, ¶ 34; *see also Bray*, 2010 WI App 22, ¶ 19

("In the case of a default judgment, relief is limited to that which is demanded in the plaintiff's complaint." (citation omitted)).

In sum, Vibrant has not shown an identity of claims between the Wisconsin Action and this litigation.[7] Perhaps discovery in this case will reveal facts and evidence demonstrating that, notwithstanding Ms. Lyke's affidavit, Unipro's claims in this case unquestionably derive from the same set of operative facts that underlie Vibrant's complaint in the Wisconsin Action. If this is the case, Vibrant may reassert its claim preclusion defense at summary judgment. But at the Rule 12(c) stage, we cannot say that "no disputed issues of material fact" exist on this issue and that Vibrant is clearly "entitled to judgment as a matter of law." *See Unite Here*, 862 F.3d at 595. We therefore deny Vibrant's Rule 12(c) motion.

## CONCLUSION

For the foregoing reasons, we deny Vibrant's motion for judgment on the pleadings (Dkt. No. 15). Because we have resolved Vibrant's motion, we lift the stay on discovery. (*See* Dkt. No. 17.) It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: August 23, 2021

---

[7] Because Vibrant has not shown that all the elements of claim preclusion are satisfied, we need not consider whether a verdict for Unipro in this litigation would undermine the Wisconsin Judgment or impair Vibrant's rights.